**UNITED STATES of America**

v.

**Benjamin SAPORTA, Howard Cohen, Eugene Freiman, Herbert Patlis, Albert Wasserman, Stanley Weiss, Martin Lasher, Robert Schwartz and Robert B. Edens, Defendants.**

No. 66–CR–425.

United States District Court
E. D. New York.

June 13, 1967.

Joseph P. Hoey, U. S. Atty. Eastern District of New York, for United States of America; George L. Barnett, Asst. U. S. Atty., of counsel.

Jon H. Hammer, New York City, for defendants Saporta, Cohen and Wasserman.

Shea, Gallop, Climenko & Gould, New York City, for defendant Lasher; Milton S. Gould, Ronald H. Alenstein, New York City, of counsel.

BARTELS, District Judge.

Defendants in this case are charged with violations of anti-fraud provisions of Section 17 of the Securities Act of 1933 (Act), [15 U.S.C.A. § 77q(a)], in connection with the offer and sale of the stock of Precision Metal Products, Inc. (Precision).  The first 17 counts of the indictment charge all of the defendants with violations of Section 17 of the Act. Count 18, however, charges only the defendants Robert B. Edens (Edens) and Robert Schwartz (Schwartz) with conspiracy to violate Sections 78h(c) and 78o(c) of Title 15 of the United States Code by means of an illegal pledge of the stock of Triangle Instrument Co., Inc. (Triangle).  The sale of the Precision stock was effectuated through the brokerage firm of Armstrong & Co., Inc. (Armstrong), allegedly organized by Schwartz as attorney and Edens as the president and controlling stockholder, of which company the defendant Martin Lasher (Lasher) subsequently became vice-president.  A number of salesmen were hired by Armstrong, among them the defendants Benjamin Saporta, Howard Cohen and Albert Wasserman (Saporta).

Count 1 of the indictment contains five paragraphs and alleges the use of the mails in offering and selling securities

by employing a device and scheme to defraud and to obtain money from purchasers by means of untrue statements of material facts and by engaging in transactions operating as a fraud upon purchasers of said securities, setting forth the scheme and device and the transactions in paragraphs 2 to 5, inclusive, as follows:

Paragraph 2—Defendants Lasher, Edens and Schwartz at all times controlled the affairs of the brokerage firm of Armstrong, and Saporta and three others were at all times salesmen for Armstrong.

Paragraph 3—Saporta knowingly made certain false and misleading statements for the purpose of deceiving and defrauding purchasers in connection with the offer and sale of Precision stock.

Paragraph 4—(a) All the defendants caused the Precision stock to be sold at a time when Armstrong was unable to meet is obligations and was in violation of the rules and regulations of the Securities and Exchange Commission as set forth in 17 C.F.R. § 240.15c3–1 (net capital ratio formula); (b) Edens, Lasher and Schwartz pledged the stock of Triangle, then being carried for the account of Armstrong's customers, for an amount in excess of the amount owed by said customers in violation of 15 U.S.C.A. §§ 78h(c) (3) and 78o(c); and (c) Edens, Lasher and Schwartz diverted payments received from purchasers of precision stock to pay the general corporate obligations of Armstrong, and failed to pay over to Precision $125,-000 of the proceeds of the public sale of Precision stock received by Armstrong.

Paragraph 5—All the defendants caused a confirmation of sale of the Precision stock to be placed in the United States mails in an envelope addressed to a customer thereon named.

Counts 2 through 17 incorporate by reference the allegations of paragraphs 1 through 4 of Count 1 and then allege sixteen other separate mailings of confirmations of the sale of Precision stock to customers, a list of names of which is therein specified.

Count 18 charges Edens and Schwartz with conspiracy to violate 15 U.S.C.A. §§ 78h(c) and 78o(c) by pledging certain stock of Triangle to Sterling Factors Corp., which stock was carried for the account of Armstrong's customers, for an amount in excess of the amount owed by Armstrong's customers.

### Saporta Motions

Defendants Saporta, Cohen and Wasserman make five motions pursuant to Rules 7(d), 7(f), 8, 14, 16 and 12(b), respectively, Fed.Rules Crim.Proc., 18 U.S.C.A., two of which have already been decided, leaving open motions under Rules 7(d), 8, 14 and 12(b) as follows:

(1) That Counts 1 through 17 should be dismissed [1] for duplicity, in that each count charges more than one offense, i. e., a securities fraud in violation of 15 U.S.C.A. § 77q(a) and an unlawful pledge of Triangle stock in violation of 15 U.S.C.A. §§ 78h(c) (3) and 78o(c), and that in the alternative, the allegation as to the unlawful pledge of the Triangle stock should be stricken as prejudicial surplusage;

(2) That Counts 2 through 17 should be dismissed and consolidated into Count 1 because multiplicitous, in that they repeat and reallege the allegations of Count 1 except that they set forth sixteen additional persons to whom various confirmations of sale of the Precision stock were forwarded through the United States mails; and (3) That Count 18 should be severed from Counts 1 through 17 upon the

---

1. The remedy for duplicity is not dismissal but a requirement of election by the Government of the charge upon which it will rely. United States v. Goodman, 5 Cir. 1960, 285 F.2d 378, cert. denied, 1961, 366 U.S. 930, 81 S.Ct. 1651, 6 L.Ed.2d 389; United States v. Leggett, 4 Cir. 1962, 312 F.2d 566; 8 Moore, Federal Practice, ¶8.04(i) at 8–12 (2d ed. 1966).

ground that there has been a misjoinder of offenses and of defendants in violation of Rules 8(b) and 14, Fed. Rules Crim.Proc., 18 U.S.C.A., resulting in prejudice to said defendants.

■ The first attack upon the duplicitous counts is predicated on the misunderstanding of the phraseology of the indictment. Each count charges only a securities fraud in violation of Section 77q(a). The language in paragraph 4 of the indictment demonstrates this fact by its assertion that "In furtherance of said scheme and artifice to defraud and for the purpose of engaging in transactions, practices and a course of business operating as a fraud and deceit upon the purchasers of Precision Inc. stock, the defendants committed, among other things, the following acts". See, United States v. Greenberg, S.D.N.Y. 1962, 30 F.R.D. 164, 170. Thus the allegation of the unlawful pledge of the Triangle stock is included as a part of the scheme to defraud and does not charge the defendants with a separate crime in Counts 1 through 17. This is illustrated by the fact that the allegations concerning the unlawful pledge of the Triangle stock do not state that such pledge was "willful" as required by 15 U.S.C.A. § 78ff and they fail therefore to state a crime. If such a crime were alleged, there would be no venue in this district for such an offense. United States v. Buerk, E.D.Wis.1941, 38 F.Supp. 409; United States v. Plotkin, E.D.Wis.1964, 233 F.Supp. 317.

■ The inclusion in these counts of the Triangle stock transaction does raise a serious question of surplusage and prejudice since the unlawful pledge of the stock does not constitute any fraud or deceit upon the purchasers of the Precision stock. What might constitute deceit and fraud would be the misuse of the proceeds of the sale of the Precision stock regardless of whether they were to satisfy a debt secured by the wrongful pledge of the Triangle stock or any other form of conversion of the proceeds. Consequently, the inclusion of the Tri-

angle stock transaction is not only surplusage but is also highly prejudicial, and the allegations pertaining to this transaction must be stricken pursuant to Rule 7(d), Fed.Rules Crim.Proc., 18 U.S.C.A.

■ Concerning Saporta's claim that Counts 1 through 17 should be consolidated because multiplicitous, the Court finds no justification for such consolidation at this time. An examination of the indictment indicates that each count is predicated upon separate offers and sales and accordingly it appears that each such act is in violation of the Securities Act and constitutes a separate offense. The Court recognizes that there has been some doubt raised upon this issue but it relies for its conclusion upon United States v. Binstock, S.D.N.Y.1965, 37 F. R.D. 13, 16; Palmer v. United States, 10 Cir. 1955, 229 F.2d 861, 867, cert. denied, 350 U.S. 996, 76 S.Ct. 546, 100 L. Ed. 861; United States v. Brown, D.C. Cir. 1964, 36 F.R.D. 207. Defendants rely upon United States v. Greenberg, supra, and United States v. Hughes, S. D.N.Y.1961, 195 F.Supp. 795, 798, which in turn refer to United States v. Cashin, 2 Cir. 1960, 281 F.2d 669. In *Cashin* the crucial issue was not whether separate crimes were committed by each offer and sale, but whether in determining the question of venue the offense could take place not only where the scheme to defraud was hatched but also where the acts in furtherance of the scheme took place. In *Greenberg* the Court interpreted *Cashin* as holding that the offense was the scheme and that the offers and sales were simply acts in furtherance thereof rather than separate offenses. In *Hughes* the Court rightfully pointed out that while each use of the mails or interstate commerce did not constitute a separate crime, each device to defraud and each obtaining of money by false statements and each transaction which operated as a fraud did constitute separate offenses.

■ The *Hughes* test seems to be the logical and proper criteria. At all

events, it is plain that a multiplicity of counts does not subject defendants to a multiplicity of sentences (United States v. Mamber, D.Mass.1955, 127 F.Supp. 925, 927) and that accordingly the determination of whether the facts upon which the multi-count indictment is based give rise to more than one criminal offense, may be postponed until the conclusion of the Government's case. United States v. Ketchum, 2 Cir. 1963, 320 F.2d 3, 8, cert. denied, 375 U.S. 905, 84 S.Ct. 194, 11 L.Ed.2d 145. Adopting the approach of Judge Wyatt in United States v. Binstock, supra, the motion to consolidate Counts 1 through 17 is denied, leaving to the trial judge the decision whether the evidence supports one or more separate offenses as formulated in the indictment.

■ Rule 8(b) permits the joinder of two or more defendants in the same indictment if they have participated in the same act or transaction constituting the offense or offenses. Count 18 of the indictment relates solely to conspiracy to illegally pledge the stock of Triangle. This pledge has no connection with the allegedly fraudulent scheme or schemes to sell the Precision stock.[2] Obviously, it does not arise out of the same act or transaction or series of transactions in which all the defendants participated. Therefore, the Saporta charge that there has been a misjoinder of Count 18 to Counts 1 through 17 is well taken. While it is true that it is unnecessary to establish prejudice arising from such misjoinder (Cupo v. United States, D.C. Cir.1966, 359 F.2d 990, cert. denied, 1967, 385 U.S. 1013, 87 S.Ct. 723, 17 L.Ed.2d 549; King v. United States, 1 Cir. 1966, 355 F.2d 700), it so happens that in this case such misjoinder would create prejudice because evidence of the illegal pledge would be admissible under Count 18, although inadmissible under Counts 1

through 17. Count 18 must therefore be severed.

*Lasher Motions*

■ In addition to joining in the above motions, Lasher moves to dismiss Counts 1 through 17 as against him upon the ground that he was only a vice-president of Armstrong and was never charged with knowledge of or participation in the misrepresentations of Saporta set forth in Count 1 and incorporated by reference in Counts 2 through 17. This challenge is based upon a misunderstanding of the offense with which Lasher is charged. According to the indictment, Lasher's participation in the scheme to defraud was not as a salesman who made false representations but as an officer of Armstrong in diverting and misusing the proceeds of the Precision stock to satisfy the corporate obligations of Armstrong. This misuse was allegedly a part of the scheme. In the language of paragraph 4(c), Armstrong and Lasher are charged with a scheme to defraud by converting "$125,000 of the proceeds of the public sale of Precision Inc. stock received by Armstrong & Co. Inc." to the general creditors of Armstrong. These charges set forth a securities fraud offense in violation of 15 U.S.C.A. § 77q(a).

■■ Finally, Lasher demands a severance under Rule 14, Fed.Rules Crim. Proc., 18 U.S.C.A., claiming prejudice by the joinder with other defendants and also with the other counts of the indictment. The basis for this charge is that Lasher is not alleged to have made any false statements and that consequently the accumulation of evidence in support of any false statements made by the other defendants will damn Lasher and impede his own defense under United States v. Kelly, 2 Cir. 1965, 349 F.2d 720, 759, cert. denied, 1966, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 and Gregory

---

2. That an inference may be drawn from the allegations of paragraph 4(c) of the indictment that the funds received from the sale of the Precision stock were used to pay the debt secured by the pledge of the stock, is insufficient because of the ambiguity of the inference and the remoteness of its connection with the scheme to defraud.

v. United States, 1966, 125 U.S.App.D.C. 140, 369 F.2d 185, 189-190. The bare allegation of prejudice is not sufficient where the acts of the defendants in support of a scheme and the conduct of business may be interrelated with the acts of the other defendants. There must be some stronger proof than a simple statement or claim of injury. If the evidence at the trial initially demonstrates prejudice against any defendant because of unrelated evidence, thus interfering with a fair trial, the Court may always grant a severance at that time. In *Kelly* and *Gregory* the grounds for severance had a stronger and more substantial foundation than those urged here. Lasher also points out that since he is not named in the conspiracy count the prejudice against him will be doubled because any evidence against Edens and Schwartz on this issue will prejudice him as an officer of Armstrong. He states that the harm is compounded by the fact that he intends to call as witnesses Edens and Schwartz in order to establish his lack of knowledge of or participation in the alleged frauds, which would be impossible unless there was a severance from other · defendants. United States v. Echeles, 7 Cir. 1965, 352 F.2d 892, and United States v. Gleason, S.D.N.Y.1966, 259 F.Supp. 282.

■ The severance of Count 18, as above ordered, obviates most of these objections. Referring to Lasher's claim that he might lose the opportunity to call Edens and Schwartz if the latter rested upon their constitutional right to refuse to testify, there is no affidavit or other evidence offered that Edens and Schwartz would testify on Lasher's behalf if there were a severance. The facts here clearly differ from *Echeles* and *Gleason*. Lasher cannot claim that this is a situation falling in the category of United States v. Bozza, 2 Cir. 1966, 365 F.2d 206, involving a confession of a co-defendant. Here there has been no admission of misrepresentation by the salesmen nor any statements offered exculpating Lasher except Lasher's self-serving denials. Accordingly, his motion for a severance under Rule 14, Fed.Rules Crim.Proc., 18 U.S.C.A., must be denied without prejudice to renew at the time of trial.

Settle order within ten (10) days on two (2) days' notice.