UNITED STATES of America

v.

BRIGHTON BUILDING & MAINTE-
NANCE CO., Krug Excavating Compa-
ny, Western Asphalt Paving Co., Union
Contracting & Material Co., Arcole Mid-
west Corporation, Crown-Trygg Corpora-
tion, Palumbo Excavating Co., Thomas
M. Madden Co., J. M. Corbett Co., Thom-
as J. Bowler, and George B. Krug, Sr.

No. 77 C 192.

United States District Court,
N. D. Illinois, E. D.

July 28, 1977.

**226**

John L. Burley, Edward J. Smith, Mark S. Prosperi, James W. Ritt, E. James Gildea, Antitrust Div., Dept. of Justice, Chicago, Ill., for the Government.

Albert E. Jenner, Nicholas D. Chabraja, Carol R. Thigpen, Jenner & Block, Chicago, Ill., for Arcole Midwest Corp.

Gary L. Griffin, Dent, Hampton & McNeela, Chicago, Ill., for Palumbo Excavating Co. and Thos. M. Madden Co.

Raymond J. Smith, Chicago, Ill., for Palumbo Excavating Co.

George D. Crowley, Richard L. Manning, Warren R. Fuller, Crowley & Goschi, Chicago, Ill., for Brighton Bldg. & Maintenance Co., Krug Excavating Co., Western Asphalt Paving Co., Union Contracting & Materials Co., Thomas J. Bowler and George B. Krug, Sr.

Barnabus F. Sears, Lawrence M. Gavin, Boodell, Sears, Sugrue, Giambalvo & Crowley, Chicago, Ill., Lewis R. Bertani, Herschbach, Tracy, Johnson, Bertani & Wilson, Joliet, Ill., for Crown-Trygg Corp.

Irwin I. Zatz, Arvey, Hodes, Costello & Burman, Chicago, Ill., for J. M. Corbett Co.

## MEMORANDUM OPINION

FLAUM, District Judge:

The instant indictment, charging nine corporations and two individuals, arises out of an alleged bid-rigging scheme involving highway construction on Federal Interstate Route 55. Count 1 charges that the defendants, acting in concert, conspired to rig the bidding on certain contracts offered by the State of Illinois in violation of the Sherman Act § 1, 15 U.S.C. § 1. Counts 2 through 38 allege that the defendants conspired to defraud the State of Illinois by submitting rigged bids and that in furtherance of this scheme the defendants used the United States mails in violation of 18 U.S.C. § 1341.[1] Presently before the court are a variety of pretrial motions filed by the parties.[2] This court shall rule on each motion seriatum.

### I. Defendant Crown-Trygg Corp. Motion to Dismiss

#### A. Count 1

Crown-Trygg Corp. has moved to dismiss Count 1 on three grounds: (1) that Count 1 fails to allege that the restraints complained of occurred in the flow of interstate commerce or that the restraints had a substantial and adverse effect on interstate commerce and therefore this court lacks jurisdiction over Count 1 under the Sherman Act § 1;[3] (2) that Count 1 fails to allege that the restraints complained of were unreasonable and therefore Count 1 fails to allege all the elements of an offense under section 1; and (3) that Count 1 is vague and indefinite and fails to inform the defendant of the nature of the accusations with the certainty required by law in violation of the Sixth Amendment and Fed.R. Crim.P. 7(c).

In support of its first ground for dismissal, Crown-Trygg argues that the in-

---

1. By motion of the Government, Counts 39 and 40, brought pursuant to 18 U.S.C. § 1962(c) against defendants Bowler and Krug, were dismissed.

2. Each defendant has moved to adopt the motions of the other defendants as they apply to each of them. These motions to adopt are granted. Requests for oral argument are denied.

3. Section 1 provides:
 Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.
 15 U.S.C. § 1.

dictment merely alleges a local conspiracy between local contractors bidding on a local project. However, as the Supreme Court has reiterated:

"[W]holly local business restraints can produce the effects condemned by the Sherman Act. . . . " As long as the restraint in question "substantially and adversely affects interstate commerce," . . . the interstate commerce nexus required for Sherman Act coverage is established.

*Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 743, 96 S.Ct. 1848, 1852, 48 L.Ed.2d 338 (1976) (citations omitted). In the case at bar, the indictment in Count 1 sufficiently alleges an affect on interstate commerce from the alleged conspiracy to satisfy the interstate commerce requirements under the Sherman Act. Thus, in paragraph 7 of the indictment, the Government alleges that federal funds were used to finance in part the construction projects on Interstate 55, and in paragraph 12, the Government alleges that there "was a substantial, continuous and uninterrupted flow of steel, cement and other essential materials from supplies outside of the State of Illinois to the job sites" in Illinois to be used on the various projects named in the indictment. Moreover, paragraph 13 of Count 1 alleges that the acts of defendants "unreasonably restrained" the aforementioned flow of federal funds and materials. Clearly, if these allegations are proved, the Government will have established a sufficient affect on commerce to support a section 1 conviction.[4] *United States v. Finis P. Ernest, Inc.*, 509 F.2d 1256, 1258–61 (7th Cir.), *cert. denied*, 423 U.S. 874, 96 S.Ct. 142, 46 L.Ed.2d 105 (1975).[5]

 As to defendant Crown-Trygg's second ground, since the Government has charged a conspiracy to rig bids, *i. e.* to fix prices, there is no need to allege that the illegal restraint "unreasonably" affected commerce. Price fixing is *per se* illegal under the Sherman Act § 1. *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940). As stated in *United States v. Finis P. Ernest, Inc., supra*,

A *per se* violation is activity, such as price fixing, for which effects need not be shown to establish the substantive offense. Restraints in this category "because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use."

509 F.2d at 1259, *quoting Northern Pac. Ry. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958). Moreover, contrary to defendant's assertion, such a *per se* rule is not unconstitutional as an illegal "conclusive presumption" in as much as the *per se*

4. The Government also argues that since the alleged bid rigging involved work on a federal interstate highway this fact alone is sufficient to support the interstate commerce nexus required by the Sherman Act. However, as defendant points out, in *Gulf Oil Corp. v. Copp Paving Company, Inc.*, 419 U.S. 186, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974), the fact that the defendant sold supplies to companies doing work on an interstate highway was insufficient to show that the supplier's activities were "in commerce" for purposes of the Robinson-Patman Act § 2(a), 15 U.S.C. § 13(a). While it is true that the Sherman Act requires less of a nexus with interstate commerce than does section 2(a), *id.* at 194, 95 S.Ct. 392 the Court intimated that the same result might apply in section 1 cases. *Id.* at 197 n.12, 95 S.Ct. 392. Nevertheless, because this court has found other allegations of interstate commerce to support the Sherman Act § 1 charge in Count 1,

this court need not resolve this question until all the evidence bearing on the issue is presented.

5. Although defendant has called this court's attention to *United States v. Starlite Drive-In*, 204 F.2d 419 (7th Cir. 1953), as a case which supports its position, this court finds *Starlite* distinguishable in its complete absence of any allegations involving interstate commerce. Moreover, to the extent *Starlite* is inconsistent with this opinion, this court believes that *Starlite* was undercut and overruled in the *Ernest* case cited in the text, and is inconsistent with the more modern and broader view of the interstate commerce requirement of the Sherman Act § 1. *See Las Vegas Merchant Plumbers Ass'n v. United States*, 210 F.2d 732, 741 n.4 (9th Cir.), *cert. denied*, 348 U.S. 817, 75 S.Ct. 29, 99 L.Ed. 645 (1954).

rule is merely a judicial explication of the "substantive" provisions of the Sherman ACt. *United States v. Manufacturers' Ass'n of Reloc. Bld. Ind.*, 462 F.2d 49 (9th Cir. 1972). *See generally* Gordon & Tenenbaum, Conclusive Presumption Analysis: The Principle of Individual Opportunity, 71 Nw.U.L.Rev. 579, 602–08 (1976).

■ Finally, defendant's challenge to Count 1, that it is unduly vague, is without merit. As the Government has pointed out, Fed.R.Crim.P. 7(c) requires only that "the indictment 'contains the element of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet,' and . . . 'in case any other proceedings are taken against him for a similar offense [sic] whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'" *Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962). A review of the present indictment convinces this court that the Government has adequately alleged the elements of a Sherman Act § 1 violation. Moreover, the Government's Voluntary Bill of Particulars resolves any doubts defendant may have concerning the nature of the charges against it as well as the circumstances out of which those charges arose.

### B. Counts 2 through 38

In support of its motion to dismiss Counts 2 through 38, Crown-Trygg argues that the Government has failed to allege the use of the mails by defendant "for the purpose of" executing the allegedly unlawful scheme to defraud as required by 18 U.S.C. § 1341.[6] Defendant argues that none of the letters involved in any of the counts were mailed by it, or for that matter by any of its alleged coconspirators, and that from the face of the indictment it is clear that the mailings could not and were not part of any scheme to defraud allegedly perpetrated by the defendants.[7]

■ However, as the Supreme Court recognized in *Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954),

> The elements of the offense of mail fraud under . . . § 1341 are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme. *It is not necessary that the scheme contemplate the use of the mails as an essential element.* [Citation omitted].

*Id.* at 8, 74 S.Ct. at 362 (emphasis supplied). Thus, in order for a mailing to be a sufficient basis for a section 1341 charge, all that is required is that the defendant "cause" the letter in each count to be mailed. Moreover, as the Court stated:

> Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended then he "causes" the mails to be used.

---

6. Section 1341 provides:

> Whoever, having devised or intended to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1341.

7. The mailings alleged in each count are as follows:

> Counts 2 through 12—Letters from the Illinois Department of Transportation dated August 1, 4, 8, 21, 25, 1975 to various defendants.
> Counts 13 through 38—Letters from the Illinois Department of Transportation containing warrants for the payments on the projects involved in the indictment sent to various defendants.

None of the letters were sent to defendant Crown-Trygg.

*Id.* at 9, 74 S.Ct. at 363. Accordingly, the Government need not allege that the letters were actually mailed by the defendant, *United States v. Brown*, 540 F.2d 364, 375–77 (8th Cir. 1976); *United States v. Keane*, 522 F.2d 534, 551–52 (7th Cir. 1975), *cert. denied*, 424 U.S. 976, 96 S.Ct. 1481, 47 L.Ed.2d 746 (1976), or that the letters themselves contained fraudulent statements or misrepresentations. *See United States v. Strauss*, 452 F.2d 375, 380 (7th Cir. 1971), *cert. denied*, 405 U.S. 989, 92 S.Ct. 1252, 31 L.Ed.2d 455 (1972).[8] Rather, the Government has sufficiently alleged that the defendant has participated in a scheme to defraud and that the defendant "caused" the letters named in Counts 2 through 38 to be mailed thereby sufficiently alleging a section 1341 charge. *See United States v. Castor*, 558 F.2d 379 at 384, 387 (7th Cir. 1977); *United States v. Brown*, 540 F.2d 364, 375–77 (8th Cir. 1976).

Therefore, the motion of defendant Crown-Trygg to dismiss the indictment is denied.[9]

## II. Motion to Dismiss the Indictment by J. M. Corbett Co.

Defendant J. M. Corbett Co. has moved to dismiss the indictment, or in the alternative to dismiss Counts 2 through 38 as being "duplicitous." Corbett argues simply that Counts 2 through 38 are in fact mere reiterations of the conspiracy charge alleged in Count 1 with a mail fraud allegation included. Corbett has not cited this court to any authority supporting its position and has filed a one page memorandum in support of its motion.

It is clear that Corbett's argument is without merit. First the elements of the crime alleged in Count 1, a violation of the Sherman Act § 1, differ from the elements of the crimes charged in Counts 2 through 38, violations of 18 U.S.C. § 1341. Since the elements of the crimes charged differ, they can be brought together and punished individually. *See United States v. Pocono Inter. Corp.*, 378 F.Supp. 1265 (S.D. N.Y.1974). It is not rare that one series of actions by a defendant can give rise to more than one violation of the laws of a jurisdiction and each such violation can be punished. *See Pereira v. United States*, 347 U.S. 1, 11, 74 S.Ct. 358, 98 L.Ed. 435 (1954).[10]

Accordingly, defendant Corbett's motion to dismiss the indictment, or in the alternative Counts 2 through 38, is denied.

## III. Motions of Defendants Palumbo Excavating Co. and Thomas M. Madden Co. to Dismiss the Indictment, or in the Alternative to Suppress Testimony

The basis of these motions is that the presidents of Palumbo Excavating Co. and Thomas M. Madden Co., testified before the Grand Jury pursuant to grants of im-

8. Defendant places great reliance on the decision in *United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), to support its position that the mailings alleged in Counts 2 through 38 are insufficient to support the section 1341 charges. However, *Maze* is inapplicable to the case at bar. In *Maze*, the mailing used to support the section 1341 charge was mailed *after* the culmination of the conspiracy and therefore could not have been part of the scheme to defraud. *Ohrynowicz v. United States*, 542 F.2d 715, at 717–719 (7th Cir. 1976). In this case, all the mailings alleged in Counts 2 through 38 occurred before the proceeds of the alleged fraud were obtained by the defendants and therefore occurred prior to the culmination of the alleged scheme. *United States v. Keane*, 522 F.2d 534, 552 (7th Cir. 1975), *cert. denied*, 424 U.S. 976, 96 S.Ct. 1481, 47 L.Ed.2d 746 (1976); *United States v. Calvert*, 523 F.2d 895, 903–04 (8th Cir. 1975), *cert. denied*, 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976).

9. Defendants Crown-Trygg, Palumbo Excavating Co., and Thomas M. Madden Co., have also moved to dismiss Counts 2 through 38 as being vague and insufficient in particulars to state a charge. However, these counts sufficiently allege a section 1341 offense for purposes of Fed.R.Crim.P. 7(c), especially in light of the Voluntary Bill of Particulars filed by the Government. Accordingly, these motions to dismiss are denied.

10. Moreover, as the court in *United States v. Joyce*, 499 F.2d 9, 18 (7th Cir.), *cert. denied*, 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974), recognized, each mailing involved in the alleged scheme could support a separate section 1341 charge.

munity authorized under 18 U.S.C. §§ 6001 *et seq.*, and that these grants of immunity should also extend to the defendant corporations which are in fact the alter egos of the presidents. Thus, defendants suggest that the indictments against them should be dismissed, or at a minimum, the testimony of their presidents should be suppressed.

This court, however, cannot agree with defendants Palumbo Excavating Co.'s and Thomas M. Madden Co.'s unsupported contention. Nothing in the Immunity Statute, 18 U.S.C. §§ 6001 *et seq.* suggests that the immunity granted to an individual to gain his testimony also prevents the use of that testimony against a corporation owned by the individual rather than against the individual himself. Moreover, nothing in the Constitution would require such a "derivative" immunity concept since the grant of immunity required to be given an individual to acquire his testimony is merely that amount of "use" immunity which protects his *personal* self-incrimination privilege. *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). Therefore, the motions of Palumbo and Madden, are denied.[11]

## IV. Motions to Strike Surplusage

■ Pursuant to Fed.R.Crim.P. 7(d),[12] defendants Brighton Building and Maintenance Co., Krug Excavating Co., Western Asphalt Paving Co., Union Contracting & Materials Co., and Crown-Trygg Corp., have moved to strike certain words and paragraphs from the indictment as prejudicial surplusage. As Professor Wright has pointed out:

The purpose of [rule 7(d)] is to protect the defendant against prejudicial allegations of irrelevant or immaterial facts. Prosecutors have been known to insert unnecessary allegations for "color" or "background" hoping that these will stimulate the interest of the jurors.

C. Wright, Federal Practice and Procedure § 127, at 277 (1969).

### A. The Words "At Least," "Among Others," etc.

■ Defendant Crown-Trygg has moved to strike words such as "at least," and "among other things" from various paragraphs of Count 1 and Count 2.[13] Crown-Trygg argues that these words are surplusage and prejudice the defendant in as much as the words allow the jury to speculate as to the nature of the crime charged in the indictment. For instance, paragraph 14(a) of Count 1 provides:

The aforesaid combination and conspiracy consisted of an agreement, understanding and concert of action among the defendants and co-conspirators, the substantial terms of which were:

(a) To allocate to Brighton Building & Maintenance Co., Krug Excavating Company and Western Asphalt Paving Co. *at least* two specific F.A.I. projects let by the State of Illinois on July 29, 1975, . . . .

(Emphasis supplied).

This court must agree with defendant Crown-Trygg that the use of terms such as "at least" in the indictment in this case serves no useful purpose and allows the jury to draw the inference that the defendant is accused of crimes not charged in the indictment. *United States v. Varner,* 283 F.2d 900, 903 (7th Cir. 1960); *United States v. Pope,* 189 F.Supp. 12, 25–26 (S.D.N.Y.

---

**11.** Moreover, this court finds no support in the record, and none is cited to this court by defendants Madden and Palumbo, that their presidents were not fully apprised of the extent of the immunity granted them or that they were led to believe by the prosecutors that the grants of immunity extended to their companies.

**12.** Rule 7(d) provides: "The court on motion of the defendant may strike surplusage from the indictment or information."

**13.** Defendants seek to strike:
1. The words "at least" appearing in paragraphs 14(a), 14(b), 14(c) of Count 1 and appearing in paragraphs 3(a), 3(b), and 3(c) of County 2 (and as incorporated in Counts 3 to 38);
2. The words "among other things" appearing in paragraph 15 of Count 1;
3. The words "among others" appearing in paragraph 16 of Count 1.

1960). *Cf. Marsh v. United States,* 344 F.2d 317, 322 (5th Cir. 1965). While the Government is not foreclosed from offering any proof relevant to the charges, *United States v. Pope, supra* at 26, as stated previously, it may not use the indictment as a vehicle to persuade the jury that the crime alleged has great and hidden implications.[14] Accordingly, Crown-Trygg's motion to strike as surplusage the words delineated in footnote 13 is hereby granted.

### B. Paragraphs 7 through 11 of Count 1

■ Defendants [15] have moved to strike paragraphs 7 through 11 of Count 1, and as incorporated in Counts 2 through 38, on the grounds that these paragraphs are not required in order to allege the crimes charged in each count and that these paragraphs contain references to various state laws which could prejudice a jury against defendants. In ruling on this motion, the court is guided by the principle that:

> A motion to strike surplusage from an indictment is addressed to the sound discretion of the District Court and should be granted *only where it is clear* that the allegations contained therein are not relevant to the charge made or contain inflammatory and prejudicial matter.

*Dranow v. United States,* 307 F.2d 545, 558 (8th Cir. 1962).

■ This court is not convinced that it is clear that the allegations found in paragraphs 7 through 11 are irrelevant to the charge in Count 1 of bid rigging or that the inclusion of these paragraphs will prejudice the defendants. Each paragraph attempts to delineate the nature of the business situation facing the defendants at the time they allegedly submitted rigged bids to the State of Illinois for work on Interstate

Route 55. The paragraphs in detail describe the procedures employed by Illinois in accepting bids. That these allegations are relevant and not surplusage is perhaps best shown by the defendants own attempts to gain a bill of particulars and discovery on just this very area.[16]

Moreover, this court finds no prejudice to defendants in paragraphs 7 through 11 reference to various statutes and regulations of the State of Illinois. Unlike the cases where other statutes are mentioned in an indictment and the implication is made that the defendant has violated these statutes as well as the one charged, thereby prejudicing the defendant, *see United States v. Mandel,* 415 F.Supp. 997, 1009 (D.Md.1976); *United States v. Saporta,* 270 F.Supp. 183, 186 (E.D.N.Y.1967), in the case at bar there is no implication that the defendants have violated the statutes referred to in paragraphs 7 through 11.

Accordingly, defendants' motion to strike paragraphs 7 through 11 is denied.

### V. Discovery Motions

### A. Motion for Exculpating Evidence

■ Defendants Brighton Building & Maintenance Co., Krug Excavating Co., Western Asphalt Paving Co., and Union Contracting & Materials Co., have moved for an order compelling the Government to turn over all evidence favorable to defendants as required by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Since the Government, in a letter dated April 1, 1977, has complied with this request and recognizes its continued obligation to supplement its initial compliance if new ex-

---

**14.** Thus, paragraph 16 of Count 1 provides that "The aforesaid combination and conspiracy charged herein has had the following effects, *among others.*" (Emphasis supplied). Clearly, the use of the words "among others" serves no purpose and can only inflame a jury into believing that the alleged crime is of greater magnitude than the evidence presents.

**15.** Defendant Crown-Trygg has moved expressly to strike paragraphs 8 through 11, while the

other defendants have moved to strike paragraph 7 as well. All the defendants make the same arguments as to each paragraph and since each defendant has moved to adopt the motions of all other defendants, *see* note 2 *supra,* this court shall discuss this motion as a motion to strike paragraphs 7 through 11 of Count 1.

**16.** See sections V., D. and VI *infra.*

culpatory evidence is found, this motion is now moot.[17]

### B. Motion to Allow Inspection and Copying of Statements

The same defendants previously mentioned in section V., A., *supra*, have moved to discover the circumstance surrounding the making of any statement by defendants (through their authorized agents) to any other individual. Thus, defendants seek to discover:

 (a) The name and address of the person to whom the statement was made;
 (b) The date on which the statement was made; and
 (c) The place where the statement was made.

■■■ Under the decision in *United States v. Feinberg,* 502 F.2d 1180 (7th Cir. 1974), *cert. denied,* 420 U.S. 926, 95 S.Ct. 1122, 43 L.Ed.2d 396 (1975), it is clear that the granting of such a request lies within the sound discretion of the trial court. Thus, although Fed.R.Crim.P. 16(a)(1), only requires the Government to disclose the *substance* of a defendant's statement made to an employee of the Government, and the Jencks Act, 18 U.S.C. § 3500, prevents the defendant from discovering the *substance* of any statements made to a third party, *United States v. Harris,* No. 75–1360, 542 F.2d 1283 at 1291–1292 (7th Cir. 1976), *Feinberg* does allow a district court to grant discovery concerning the *circumstance surrounding* statements made by defendants to persons not employed by the Government. 502 F.2d at 1181.

■■■ In the case at bar, the Government has not presented any persuasive reason for why this discovery request by defendants should not be granted. Although it is true that by ordering disclosure such as this a partial list of witnesses · will be provided defendants,[18] because of the nature of the evidence sought to be discovered it is important that the defendants have time to investigate the persons who might inculpate them with the defendants' own words. Moreover, the Government's bald assertion that the disclosure of the circumstances surrounding the making of any statement to a third person will require the disclosure of . the *substance* of the third person's testimony is without merit. The Government has presented no evidence to support its claim and to recognize such an assertion as a routine matter would destroy the discretion given district courts by *Feinberg* in this area. Finally, the Government has not contended that any witnesses would be in danger of intimidation if such discovery was allowed.

Accordingly, defendants' motion to compel discovery of the circumstances surrounding the making by defendants of any statements is granted.

### C. Crown-Trygg's Motion For Inspection of Grand Jury Transcripts

■■■ Defendant Crown-Trygg has moved to discover all grand jury testimony which mentioned it. This request is denied. As recognized by the Seventh Circuit, the discovery of grand jury testimony, other than *Brady* material or as required by *Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966) at time of trial,[19] is ordinarily refused unless a showing of "particularized need" is made. *Pollard v. United States,* 441 F.2d 566, 568 (7th Cir. 1971). In the case at bar, no such particularized need is presented and the

---

17. Since the Government has stated that it has complied with the requirements of *Brady,* this court need not order that all evidence in the Government's possession be given to defendants. *See United States v. Hauff,* 473 F.2d 1350, 1354 (7th Cir.), *cert. denied,* 412 U.S. 907, 93 S.Ct. 2299, 36 L.Ed.2d 972 (1973).

18. It should be noted that this court has denied defendants' request for a complete list of witnesses. *See* section V., D. *infra.*

19. The Government has informed the court that all *Brady* material found in the grand jury transcripts has been given to the defendants. Moreover, the grand jury testimony of any witness called by the Government at trial will be given to defendants one day prior to their testifying.

general rule that grand jury testimony must be confidential controls. Accordingly, defendant's motion is denied.

### D. Other Discovery Requests

Defendant Crown-Trygg has made a sweeping motion for discovery in addition to the specific items already discussed. Again, this court shall discuss each request seriatum.

█ In paragraphs 1, 2, 3 and 6, defendant requests all statements made by it to other parties. As stated in section V., B. of this opinion, this court delineated the rules governing these requests. Thus, pursuant to Fed.R.Crim.P. 16(a)(1), the Government need only disclose those statements made by Crown-Trygg which the Government intends to use at trial and which were made to Government employees. Any other statements made by defendant are protected from disclosure by the Jencks Act. *See United States v. Zarattini,* No. 76–1416, 552 F.2d 753 at 758 (7th Cir. 1977). Accordingly, except as previously provided, these requests are denied.[20]

█ Paragraph 4's request for the criminal record of Crown-Trygg is granted pursuant to Fed.R.Crim.P. 16(a)(1)(B). However, so that the Government can properly process defendant's request, Crown-Trygg is ordered to supply the Government with the names of the employees or officers whose records it wants checked. Moreover, the Government, to the extent it has not yet done so, should supply any criminal records of all employees or officers of Crown-Trygg that the Government believes may be involved in this case.

Paragraph 5 seeks to discover all tangible evidence in the Government's possession and, pursuant to rule 16(a)(1)(C), has been complied with by the prosecution.

Paragraph 7's request for wiretap information has been complied with by the Government. But, upon the submission by defendant of a list of its employees defendant wants checked, the Government shall see if there is any wiretap information relative to those on the list. *United States v. See,* 505 F.2d 845, 855–56 (9th Cir. 1974), *cert. denied,* 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673 (1975).

█ As to paragraphs 7 and 8, these seek to discovery any grants of immunity or promises of leniency given by the Government to any party or witness. The Government has met its obligations as set forth in *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), but it should provide Crown-Trygg with a *list* of all witnesses granted immunity pursuant to 18 U.S.C. §§ 6001 before the grand jury.

█ Paragraph 10's request for a list of witnesses is denied there having been no showing of need by defendant. *United States v. Jackson,* 508 F.2d 1001 (7th Cir. 1975).

Paragraph 11 has been complied with to the extent required by *Brady* and in all other respects its requests are denied.

### VI. Motions for Bills of Particular

Defendants Brighton, Krug Excavating, Western, Union, Crown-Trygg, Corbett, Palumbo, and Madden have filed requests for bills of particulars. However, in light of the sufficiency of the indictment, the voluntary bill of particulars, and the discovery granted defendants by this opinion, the requests for further particulars are denied. Defendants have been made fully aware of the nature of the charges against them so as to avoid any double jeopardy problems and so as to properly prepare their defenses. *See United States v. Mahany,* 305 F.Supp. 1205, 1209 (N.D.Ill.1969).

---

20. Defendant's requests for all statements made by codefendants is likewise denied since Crown-Trygg has not demonstrated a need for such statements. *United States v. Zarattini,* No. 76–1416 at 758 (7th Cir. 1977). However, all statements made by alleged coconspirators of defendant to Government agents which the prosecution intends to use at trial as a coconspirator exception to the hearsay rule statement by Crown-Trygg should be disclosed to Crown-Trygg at this time. *United States v. Agnello,* 367 F.Supp. 444, 448 (E.D.N.Y.1973).

### VII. Motions for Severance

#### A. Severance of Defendants

Defendants J. M. Corbett Co., Thomas M. Madden Co., Palumbo Excavating Co., and Crown-Trygg have each moved to sever their trial from the trial of their codefendants. Fed.R.Crim.P. 14.[21] Defendants raise three arguments in support of their motion: first, that the evidence in this case is too complex and a jury will not be able to separate and limit the evidence to the proper defendant; second, that defendants would be prejudiced by a joint trial with defendants Thomas Bowler and George Krug because of certain publicity arising out of those defendants' attempts to plead *nolo contendere* in this case; and third, that certain evidentiary problems will arise from a joint trial of defendants. This court, however, cannot agree that joinder of all defendants for trial is inappropriate and the motion to sever defendants is denied.

 As to the first contention, all conspiracy cases are involved, and absent unusual circumstances like those present in *United States v. Balistrieri,* 346 F.Supp. 336, 339–40 (E.D.Wis.1972), and *United States v. Sanders,* 266 F.Supp. 615, 621–22 (W.D.La.1967), such cases should be tried with all coconspirators. Thus, since joinder is unquestionably proper in this case pursuant to Fed.R.Crim.P. 8, defendants carry a heavy burden of showing that prejudice would result from a joint trial. 8 J. Moore, Federal Practice ¶ 14.02[1], at 14–4 (1976). And, since defendants are really arguing that they will have a better chance of acquittal in a separate trial, the "complexity" of this case does not require severance of defendants. *Id.* at ¶ 14.04[1], at 14–14.2 to 14–15.

 Next, the fact that defendants Bowler and Krug have received mention in the press from this case, as evidenced by the news clippings attached to defendants'

motions, does not require severance of defendants at this time. As the court in *United States v. Balistrieri, supra,* recognized, any possible prejudicial publicity can be disclosed and remedied at the voir dire. *Id.* at 339–40. Accordingly, the existence of publicity involving defendants Bowler and Krug is not sufficient cause to allow severance in this case.

Finally, defendants raise three arguments, based on three cases, to support their contention that a joint trial will create evidentiary problems which will prejudice each defendant's ability to present a proper defense. First, defendants argue, relying on *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), that their Sixth Amendment right to cross-examination of witnesses will be infringed in a joint trial if the Government seeks to introduce the testimony of codefendants which inculpates each defendant. In *Bruton,* defendant Evans made an oral confession in which he admitted that both he and Bruton committed the crime charged. Recognizing that the hearsay rule made Evans' extrajudicial statement inadmissible as to defendant Bruton at trial, the trial court gave the jury a limiting instruction, informing them only to use the Evans' confession as evidence against Evans and not Bruton. The Supreme Court, however, held that the admission of the testimony of Evans' confession so tainted Bruton's defense that the limiting instruction was insufficient to protect his rights, especially since Bruton could not crossexamine Evans who did not, and could not be compelled to, take the stand.

 While this court recognizes the importance of the *Bruton* rule, this court notes that the rule does not apply in a situation, such as present in the case at bar, in which the codefendant's statement inculpating the other defendant would be admissible through a recognized exception to the hearsay rule against the other defendant in a separate trial. Thus, as stated in *United*

---

**21.** Rule 14 provides:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. Fed.R.Crim.P. 14.

*States v. Isaacs,* 493 F.2d 1124 (7th Cir.), cert. denied, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974),

> In *United States v. Jones,* [7 Cir., 438 F.2d 461, 466] . . . the Seventh Circuit rejected the applicability of *Bruton* to a situation where the statements of a codefendant "fall within the well recognized exception to the hearsay rule that declarations made in connection with a joint venture are admissible against the party who is not present." The community of interest of the coconspirators evidences likelihood of reliability.

*Id.* at 1161 (citation omitted). Accordingly, since any statements inculpating defendants made by codefendants are admissible against defendants under the coconspirator exception to the hearsay rule, no Sixth Amendment or *Bruton* problem is created. *See also* 8 J. Moore, *supra* at ¶ 14.04[2].

Next, defendants rely on *United States v. Echeles,* 352 F.2d 892 (7th Cir. 1965). In *Echeles,* defendant Echeles was tried jointly with defendant Arrington. Although Arrington had made statements inculpating himself, he repeatedly stated that defendant Echeles was not involved in the alleged crime. However, since the defendants were tried together, Arrington informed the court that he would not take the stand and that if called by Echeles in a joint trial he would assert his Fifth Amendment self-incrimination privilege. Arrington did state that he would testify on Echeles behalf if Echeles were tried separately. The Seventh Circuit held that Echeles was denied his right to a fair trial by the district court's refusal to grant his motion for severance.

■ Defendants' reliance on *Echeles* to support their request for severance in the case at bar is misplaced. As the Seventh Circuit has recently recognized, *Echeles* has been limited to its facts and does not require the granting of a severance to a defendant on the mere, unsupported assertion that the defendant wants to call codefend-

ants as witnesses. *United States v. Harris,* No. 75–1360 at 1311–1313 (7th Cir. October 12, 1976). Thus, the court stated in *United States v. Kahn,* 381 F.2d 824 (7th Cir.), cert. denied, 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661 (1967): "The unsupported possibility that such testimony might be forthcoming does not make the denial of a motion for severance erroneous." *Id.* at 841. Therefore, since defendants have not presented any evidence even to suggest that any of their codefendants [22] would exculpate them, defendants have failed to establish any prejudice by a joint trial because of their inability to call their codefendants as witnesses. *See also United States v. Abraham,* 541 F.2d 1234, 1240 (7th Cir. 1976); *United States v. De La Cruz Bellinger,* 422 F.2d 723, 726 (9th Cir.), cert. denied, 398 U.S. 942, 90 S.Ct. 1860, 26 L.Ed.2d 278 (1970); *United States v. Withers,* 303 F.Supp. 641, 645–46 (N.D.Ill.1969).

Finally, defendants rely on *De Luna v. United States,* 308 F.2d 140 (5th Cir. 1962). In *De Luna,* the Fifth Circuit held that a defendant was prejudiced by a joint trial with a codefendant where the codefendant took the stand and thereupon commented in closing argument on the defendant's failure to take the stand in his own behalf. Defendants argue that in the case at bar a similar problem could arise if their codefendants testify during a joint trial.

■ The Seventh Circuit, however, has not recognized the broad rule enunciated in *De Luna. United States v. Kahn, supra* at 839–41. Moreover, even if the *De Luna* rule is viable in this circuit, in the case at bar it is too early to decide whether the problem which arose in that case would require severance in this case. Thus, whereas the defendants in *De Luna* presented mutually exclusive defenses with the comment on one defendant's failure to take the stand being relevant, in the case at bar there is presently no showing by the defendants that any of their defenses are antagonistic to the other defendants' de-

---

22. The only codefendants *Echeles* could apply to would be the individuals named in the indictment, Bowler and Krug, since only they could claim a Fifth Amendment privilege if they were called by their codefendants in a joint trial.

fenses. Accordingly, defendants' *"De Luna"* motion is denied. *See also United States v. De La Cruz, supra* at 726–27.

B. Severance of Counts 2 through 38

 Defendant Crown-Trygg has also sought to sever for trial Counts 2 through 38 [23] of the indictment. However, this court does not believe that a joint trial on all offenses charged against defendants will prejudice the defendants especially where all the charges arise out of a single alleged conspiracy. *United States v. Rogers,* 475 F.2d 821, 827–29 (7th Cir. 1973); *United States v. Kahn, supra* at 841–42. Thus, the motion to sever counts is denied.

It is so ordered.

---

23. Crown-Trygg has also moved to sever Counts 39 and 40, but the Government has already voluntarily dismissed these counts. *See* note 1 *supra.*