UNITED STATES of America

v.

CLIMATEMP, INC.; Evco Associates, Inc.; Gideon Engineering Corp.; R. A. Martin Co., Inc.; Reliable Sheet Metal Works, Inc.; Steel City Ventilating & Sheet Metal Co.; Zack Company; Hardy Ventilating Corporation; The Narowetz Company; Sheet Metal Workers, International Association, Local 73; Robert Ahrenhold; William Black; Victor Comforte; John Eiselt; Melvin Fakter; Kenneth Gardner; Gideon Goldschmidt; Charles L. Howard; Raymond J. Lyons.

No. 78 CR 388.

United States District Court,
N. D. Illinois, E. D.

July 26, 1979.

Arthur Feiveson, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Michael B. Nash, Chicago, Ill., for Climatemp, Inc.

Kenneth A. Stoumen, Lawrence T. Stanner, Chicago, Ill., for Evco Associates.

Theodore G. Gaines, John D. Donlevy, Bryson P. Burnham, Chicago, Ill., for Gideon Engineering.

Alvin E. Rosenbloom, Chicago, Ill., for R. A. Martin Co.

Sherman C. Magidson, Francis E. Andrew, Chicago, Ill., for Reliable Sheet Metal.

George D. Crowley, Chicago, Ill., for Zack Co.

William J. Martin, Chicago, Ill., for Narowetz Co.

Harry J. Busch, Sherman C. Magidson, Chicago, Ill., for Sheet Metal Workers.

Robert S. Bailey, Chicago, Ill., for Robert Ahrenhold.

Harry J. Busch, Sherman C. Magidson, Chicago, Ill., for William Black.

Michael B. Nash, Chicago, Ill., for Victor Comforte.

Kenneth A. Stoumen, Lawrence T. Stanner, Chicago, Ill., for John Eiselt.

Sherman C. Magidson, Francis E. Andrew, Chicago, Ill., for Melvin Fakter.

Robert S. Bailey, Chicago, Ill., for Kenneth Gardner.

Theodore G. Gaines, George J. Cotsirilos, Chicago, Ill., for Gideon Goldschmidt.

George D. Crowley, Chicago, Ill., for Charles L. Howard.

Richard A. Walsh, Chicago, Ill., for Raymond Lyons.

## ORDER

ROSZKOWSKI, District Judge.

The indictment in this case arises out of an alleged bid-rigging scheme within the sheet metal industry. Count I of the indictment charges that the defendants combined and conspired to allocate the jobs and rig the bidding on certain contracts for the sheet metal phase of construction on public projects in the Chicago area in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. Counts 2 through 13 charge that the defendants conspired to defraud governmental entities soliciting bids on public projects by submitting these rigged bids and that in furtherance of this scheme the defendants used the United States mails, in violation of 18 U.S.C. § 1341. The defendants have filed various pre-trial motions to which the government has responded. The court shall rule on these motions *seriatim.*

Initially we note that numerous defendants have filed motions to adopt the motions of various other defendants. These motions are granted. Thus, in discussing the merits of the motions that follow, the court will consider them collectively, without regard to the defendant who raised the issue.

## I

## MOTION TO DISMISS COUNT ONE OF THE INDICTMENT ON THE GROUND THAT THE SHERMAN ACT IS UNCONSTITUTIONAL

The defendants argue that Congress has overstepped constitutional limitations in making a felony out of the Sherman Act and that the Sherman Act as amended is unconstitutionally vague. The defendants cite no case law or other authority in support of this position beyond this conclusory allegation. This argument is without merit. That the Sherman Act is constitutional is well settled. *Northern Securities Co. v. United States,* 193 U.S. 197, 24 S.Ct. 436, 48 L.Ed. 679 (1904). Under the Commerce Clause, U.S.C.A.Const. Art. 1 § 8 cl. 3, Congress has the authority to impose criminal liability for violations in restraint of trade or commerce.

## II

## MOTION TO DISMISS INDICTMENT ON THE GROUND THAT THE INDICTMENT IS MULTIPLICIOUS

Defendants contend that Counts II through XIII are indistinguishable from Count I, and merely repeat the allegations of Count I. Their argument is that Count I charges a textbook example of a bid-rigging offense, while the remaining counts "have emasculated this routine charge into a series of further felonies under the mail fraud statute." The defendant argues that by tacking on the mail fraud counts the government has sought to multiply the number of offenses which can be attributed to a single activity.

This indictment does not attempt to multiply the offenses against the defendants by charging them with the same offense in several different counts. The allegations of mail fraud do not merely repeat the allegations of Count I. The Sherman Act and the mail fraud counts are separate and distinct offenses and require different elements of proof. In *United States v. Brighton Building and Maintenance Co.,* 435 F.Supp. 222 (N.D.Ill.1977), a defendant made a similar motion to dismiss 37 mail fraud counts on the ground that they were mere reiterations of the conspiracy charge alleged in Count I with a mail fraud allegation included. The court found the argument without merit, ruling that the elements of the crime alleged in Count I differed from the elements of the crimes charged in Counts II through XXXVIII. Since the elements of the crimes charged differ, they can be brought together and punished individually. See *United States v. Pocono Inter. Corp.,* 378 F.Supp. 1265 (S.D.N.Y.1974). It is not rare that one

series of actions by a defendant can give rise to more than one violation of the laws of a jurisdiction and each such violation can be punished. See *Pereira v. United States*, 347 U.S. 1, 11, 74 S.Ct. 358, 98 L.Ed. 435 (1954). 435 F.Supp. at 229. Not only is mail fraud a separate offense from the Sherman Act, but each count of mail fraud in itself is a separate offense. *United States v. Joyce*, 499 F.2d 9, 18 (7th Cir. 1974) citing *Badders v. United States*, 240 U.S. 391, 36 S.Ct. 367, 60 L.Ed. 706 (1916). Therefore, since the various counts do not repeat the same offense but charge separate offenses the motion to dismiss on the ground that the indictment is multiplicious is denied.

### III

### MOTION TO DISMISS COUNT ONE ON THE GROUND THAT INTENT IS NOT ALLEGED

■ Defendants have also moved to dismiss the indictment on the ground that the indictment fails to expressly allege intent. Intent is an essential element in a criminal violation of the Sherman Act. In *United States v. United Gypsum Co.*, 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978), the Supreme Court held that in criminal violations of the Sherman Act the government is required to prove either that: (1) the defendant acted with knowledge that his acts would have probable anticompetitive effects, or (2) that the defendant acted with the purpose of producing anticompetitive effects. The defendant moves to dismiss on the ground that the instant indictment contains no allegation that the defendants ever had the requisite intent to effectuate the object of the conspiracy.

■ In evaluating the sufficiency of an indictment, common sense and reason prevail over technicalities. *Parsons v. United States*, 189 F.2d 252, 253 (5th Cir. 1951). Fairly read, the present indictment meets

the requirement of Rule 7(c) of the Fed.R. Crim.Pro. in that it contains "a plain, concise and definite written statement of the essential facts constituting the offense charged." In analyzing the indictment in its whole context, it is clear that all of the necessary elements are expressed or implied. *United States v. Wabaunsee*, 528 F.2d 1, 3–4 (7th Cir. 1975).

In Count I of the instant indictment the defendants are charged with a conspiracy to restrain trade by allocating jobs and rigging bids. Paragraphs 12–14 charge that the defendants engaged in a combination and conspiracy in unreasonable restraint of interstate trade and commerce, that this combination and conspiracy consisted of a continuing agreement, and that the defendants did those things which they conspired to do. Although the word "intent" is not specifically used, the requisite mental state of knowledge or intent is implicit in the charge. *United States v. Azzarelli Const. Co.*, 459 F.Supp. 146, 149 (1978).[1]

■ Accordingly, this Court finds that the instant indictment meets the test of *Gypsum*. Although the word intent is not specifically used here, it may be implied from a reading of the whole of the indictment. As will be developed more fully later in this order, the court finds that the indictment meets the constitutional requirements in that it provides the defendants with sufficient information to prepare a defense and protect them against double jeopardy. *United States v. Ray et al.*, 514 F.2d 418, 422 (7th Cir. 1975).

### IV

### MOTION TO DISMISS COUNTS II THROUGH XIII ON THE GROUND THAT MAILINGS ARE NOT IN FURTHERANCE OF THE SCHEME TO DEFRAUD

■ Defendants argue that a necessary element of § 1341 is that the mailing

---

1. *Azzarelli*, decided after the *Gypsum* case, found that the *Gypsum* requirements were met where intent was not specifically alleged but the indictment charged "that the defendants entered into a conspiracy, the essential terms of which were to suppress and eliminate competition for the construction of at least one specific portion of a public highway . . . ." *Azzarelli, supra*, at 149.

be in execution of the scheme to defraud, and that the alleged mailings here were subsequent to and not incidental to the scheme and so, not in execution of the scheme. At this stage of the proceedings the court is merely passing upon the sufficiency of the indictment. The question as to the relationship between the bid-rigging scheme and the mailings is an evidentiary matter. The issue here is whether the court, upon reading the indictment would find it inconceivable that the government could produce evidence at trial to show that the mailings were in furtherance of the scheme. Thus, the only questions here are first whether the indictment charges a fraudulent scheme within the scope of the mail fraud statute, and, second, whether the indictment alleges mailings in furtherance of that alleged scheme. The two necessary elements for a violation of the mail fraud statute are: (1) formation of a scheme with intent to defraud, and (2) the use of the mails in furtherance of that scheme. *United ed States v. Keane*, 522 F.2d 534, 544 (7th Cir. 1975). It is not necessary that the scheme contemplate the use of the mails as an essential element. *Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954). The instant indictment has alleged that the defendants devised a scheme to defraud governmental entities soliciting bids on public projects within the State of Illinois, and that the mails were used in furtherance of that scheme.

■ In order for a mailing to be a sufficient basis for a § 1341 charge all that is required is that the defendant cause the letter in each count to be mailed. *Brighton, supra*, at 228. "Whe[n] one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can be reasonably foreseen, even though not actually intended then he 'causes' the mails to be used." *Pereira, supra*, 347 U.S. at 8–9, 74 S.Ct. 358. The indictment in the present case has sufficiently alleged that the defendants "caused" the mailings under this definition.

In determining next whether the mailings were alleged to be made for the purpose of executing the scheme, it is helpful to look at what the Seventh Circuit said in *United States v. Rauhoff*, 525 F.2d 1170, 1176 (7th Cir. 1975):

Mailings are in furtherance of a scheme if they are incidental to an essential part of the scheme. Under this definition, mailings made after the scheme has reached its fruition are not in furtherance of the scheme . . . nor are mailings which conflict with the purposes of the scheme and have little effect upon the scheme. On the other hand, mailings made to promote the scheme . . . or which relate to the acceptance of the proceeds of the scheme . . . or which facilitate concealment of the scheme . . . have been found to have been in furtherance of the scheme under this definition. Thus, it cannot be said, as Rauhoff contends, that mailings which occur subsequent to the fraudulent acts may never be in furtherance of the scheme . . .

■ Mailings in furtherance of the collection of the proceeds from a fraudulent scheme is sufficient under the mail fraud statute. *Keane, supra* at 552. The present indictment alleges that mailings of bonds and purchase orders to the contractor allocated the project were part of the process for the defendant to do the job and be paid.

The Court of Appeals in *United States v. Castor*, 558 F.2d 379, 384–385 (7th Cir. 1977) set down a test under which to analyze the sufficiency of the indictment:

The question is not whether the indictment particularly alleges sufficient facts from which a jury could find that the mailings charged were in furtherance of the scheme, but rather whether the Government conceivably could produce evidence at trial showing that the designated mailings were for the purpose of executing the scheme. *United States v. Sampson*, 371 U.S. 75, 76, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962).

The resolution of the question of whether the mailings alleged were in furtherance of the scheme must await trial. The motion to dismiss is therefore denied.

## V

### MOTIONS TO DISMISS ON THE GROUNDS THAT COUNTS FAIL TO CONSTITUTE OFFENSES

■ The essential elements for a conspiracy under the Sherman Act are time, place, intent, manner and means of effecting the conspiracy. The essential elements for violation of the mail fraud statute have been enumerated elsewhere in this order. In reviewing this indictment the court finds that each of the essential elements to charge a violation of both the Sherman Act and the mail fraud statute have been alleged in the indictment. Therefore, the motions to dismiss must be denied.

## VI

### MOTION TO DISMISS ON THE GROUND THAT THE INDICTMENT IS VAGUE

■ There are two constitutional concerns that compel the indictment procedure: the Fifth Amendment's guarantee of the right to indictment by a grand jury and its double jeopardy bar; and the Sixth Amendment's guarantee that a defendant be informed of the charge against him. At a minimum these guarantees require:

(1) that an indictment adequately apprise a defendant of the charge against him so that he can prepare his defense and (2) that if future proceedings are brought against the defendant for a similar offense, the record shows to what extent the defense of double jeopardy is available. *United States v. Ray et al.*, 514 F.2d 418, 422 (7th Cir. 1975).

A review of the indictment reveals that it adequately alleges the elements of a Sherman Act violation and comports with the requirements of Rule (7)(c) Fed.R.Crim.Pro. All the essential facts constituting the offense charged have been set out. The defendants have been provided with enough information to sufficiently inform them of the charges against them, and the charges have been set forth well enough to protect them from the danger of double jeopardy. Therefore, the motion to dismiss is denied.

## VII

### MOTION TO DISMISS COUNTS II TO XIII ON GROUND THAT PROSECUTION UNDER SHERMAN ACT PRECLUDES MAIL FRAUD CHARGES

Defendants contend that filing a charge under the Sherman Act, 15 U.S.C. § 1 *et. seq.* forecloses the government from filing a charge for mail fraud arising out of the same transaction. The defendants argue that the Sherman Act is the result of a specific Congressional intent to prohibit certain conduct, while the mail fraud statute is a general statute created to prohibit certain limited types of fraudulent conduct not otherwise covered by specific statute. The defendants' contention is that the Sherman Act was designed to specifically govern the type of activity alleged in this indictment, and it was not Congress' intent that a Sherman Act violation could be coupled with a mail fraud violation. They claim that mail fraud has limited applicability and cannot be invoked in an area where specific legislation exists. The defendants argue that this is true because: (A) Congress limited the penalty for a Sherman Act violation to three years and thereby implicitly foreclose the possibility of bringing conduct prohibited by the Sherman Act within any statute which imposes a more severe penalty such as the mail fraud statute which imposes a five year penalty for each mailing; and (B) that the court should apply a "rule of lenity" as is required in resolving any ambiguity in determining the intent of Congress in punishing multiple aspects of the same criminal act.[2]

---

**2.** Defendants argue that the principle underlying *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), indicates an interstatutory rule of lenity which, if applied to this case, would not permit the attribution to Congress of an intention to punish antitrust violations beyond the clear language of 15 U.S.C. § 1 and so would not permit the punishment of multiple aspects (mail fraud) of the same crime (restraint of competition).

In disposing of defendants' second ground, the court here finds that there is no ambiguity in the intent of Congress as to what acts mail fraud applies to, and so the resultant conclusion is that the "rule of lenity" does not apply here.

It is also clear to the court that a prosecution under a specific statute such as the Sherman Act does not preempt a prosecution under the mail fraud statute as well. Nowhere in the Sherman Act does it state, nor is it implied that a prosecution under that statute forecloses prosecution for the same activity under another statute. Likewise, 18 U.S.C. § 1341 indicates no such restriction as to the type of activity to which it can be applied. Where conduct of the defendant violating a specific statute also violates a separate statute with additional elements, the courts have allowed prosecutions under both to proceed. *United States v. Tallant*, 547 F.2d 1291 (5th Cir. 1977), *United States v. Pocono International Corp.*, 378 F.Supp. 1265 (S.D.N.Y.1974). The correct test to apply is that prosecution under the two statutes will be permissible where distinct specific acts are alleged and different elements of proof are required. *United States v. Arcole Midwest Corp.*, 77 CR 190.

Here the counts in the indictment allege separate and distinct offenses which are violations of separate statutes with different elements of proof. Count I charges a violation of the Sherman Act, 15 U.S.C. § 1. One element of proof under the Sherman Act is an agreement to restrain trade; another is an effect on interstate commerce. *United States v. Socony Vacuum Oil Co.*, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940). Counts II–XIII charge violations of mail fraud, 18 U.S.C. § 1341. These counts require proof of formation of a scheme with intent to defraud, and the use of the mails in furtherance of that scheme. *United States v. Keane*, 522 F.2d 534, 544 (7th Cir. 1975). Clearly, the Sherman Act and mail fraud counts require at least one element of proof separate and distinct and so can be brought together and punished individually. *Brighton, supra* at 222.

The cases cited by defendants to support his position are not applicable to the situation in the case at bar. *See, Azzarelli, supra*, at 150. Therefore the motion to dismiss on this ground is denied.

### VIII

### MOTION TO DISMISS MAIL FRAUD COUNTS ON THE GROUND THAT THE INCLUSION OF ISSUES RELATING TO MAIL FRAUD ARE INFLAMMATORY AND PREJUDICIAL

In support of this ground for dismissal the defendants place heavy reliance on several cases to support their proposition that inclusion of mail fraud allegations in an antitrust case will unfairly prejudice the jury against them. None of the cases relied on by the defendants stand for the proposition that an indictment containing mail fraud and Sherman Act counts is inherently prejudicial. The cases cited by defendants are cases where the ultimate determination of prejudice was made after all the evidence was in.[3] In one of the cases the court made the determination of prejudice due to the injection of fraud because the fraud fell outside the bounds of the indictment and bill of particulars,[4] while in another the court found the injection of information relating to fraud was prejudicial because the defendants were not charged with fraud.[5] But in the case at bar the situation is different—the defendants have been indicted on thirteen counts of mail fraud. As was stated before, an indictment charging both a Sherman Act and mail fraud violations is permissible. The mere combination of the two does not unfairly prejudice the defendants. The court concludes that severance is not necessary here to avoid prejudice.

---

3. *United States v. Allied Asphalt & Paving Co.*, 451 F.Supp. 804, (N.D.Ill.1978).

4. *United States v. Pfizer & Co.*, 426 F.2d 32 (2d Cir. 1970).

5. *United States v. E. T. Simonds Const. Co.*, 76–2 Trade Cases, ¶ 61018 (S.D.Ill.1976).

## IX

### MOTION TO DISMISS BECAUSE OF UNDUE INFLUENCE EXERTED UPON GRAND JURY

 The defendants contend that the grand jury was unduly influenced in returning the indictment due to the presence of the signatures of several high ranking Justice Department officials on the indictment. Defendants argue that the grand jury was improperly influenced by the weight that they gave to the opinion of these signatures. Defendants cite no cases which hold that the actions of the prosecutor in submitting the indictment with the signatures already affixed results in undue influence justifying dismissal of the indictment. Two cases [6] presented by the government found it unnecessary to dismiss indictments where the government attorneys had affixed their signatures to the indictments prior to consideration by the grand jury.

The bare assertion of undue influence due to presigning an indictment without more is not enough evidence to require dismissal of an indictment. Accordingly, defendants' motion to dismiss the indictment is denied.

## X

### MOTION FOR SEVERANCE

Defendants Black and Local 73 have moved for severance of their trial under Rule 14, alleging that they will be prejudiced by a joint trial with companies and individuals charged with mail fraud. Local 73 and Black have also requested severance of Count I from the mail fraud counts. Defendant Wagner has claimed that there is a danger of improper transference of evidence upon him directed at other defendants. Defendant Lyons claims that his trial has to be severed because the other defendants will conduct defenses antagonistic to his and attempt to exonerate themselves by placing the blame for their conduct on him. Lyons further states that he can't receive a fair trial if he has to defend against allegations by both the United States and his co-defendants.

 Under Fed.R.Crim.Pro. 8, joinder of offenses and defendants is proper in a case where the defendants have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Joinder may be attacked under Rule 14 of the Fed. R.Crim.Pro., but the defendant carries a heavy burden of having to show that prejudice would result from a joint trial. Policy weighs against severance. Persons jointly indicted should be jointly tried, especially where all the charges arise out of a single alleged conspiracy. *United States v. Papia*, 560 F.2d 827, 836–837 (7th Cir. 1977), *United States v. Brighton, supra* at 234–236. The claim that a separate trial will give one a better chance of acquittal is not enough. To be entitled to a severance, a defendant must show not merely that a separate trial will offer him a better chance of acquittal, but that he will be unable to obtain a fair trial without severance. *United States v. Abraham*, 541 F.2d 1234, 1240 (7th Cir. 1976).

"Ultimately the question is whether, under the circumstances of the particular case, a properly instructed jury can follow a court's limiting instructions and assess each defendant's guilt or innocence solely on the basis of the evidence admissible against him." *Papia, supra* at 837. The contention that a case is too complex or confusing to a jury amounts to nothing more than an unfounded speculation that jurors disregard the clear instructions of the court in arriving at their verdict. *Opper v. United States*, 348 U.S. 84, 94–95, 75 S.Ct. 158, 99 L.Ed. 101 (1954); *See also, Brighton, supra* at 234.

 The indictment here alleges that the conspiracy involved a common plan involving joint participation by the defendants to rig bids. The mail fraud is alleged

---

6. *United States v. Levine*, 457 F.2d 1186 (10th Cir. 1972); *United States v. Tedesco*, 441 F.Supp. 1336 (1977).

to arise out of and be part of the common plan. The same evidence will be relevant to the Sherman Act as well as the mail fraud counts. Therefore, joinder is proper. *United States v. Gill*, 490 F.2d 233 (7th Cir. 1973), cert. denied, 417 U.S. 968, 94 S.Ct. 3171, 41 L.Ed.2d 1139 (1974).

As to the contentions that the jury will transfer evidence or find guilt by association, the court feels that proper instructions to keep the evidence separate will protect the defendants from prejudice. Lyons has made allegations that his co-defendants' defenses will be antagonistic to his. However, he has not supported this conclusion with a showing of how or why the defenses will be antagonistic. Even if the defenses were to a degree antagonistic, however, it does not follow that there should be two or more trials. One has no right to any tactical advantage that would result if evidence that is admissible against him in either a joint or separate trial might be unavailable in a separate trial. *United States v. McPartlin,* 595 F.2d 1321 (7th Cir. 1979). It is therefore the settled rule that a defendant is not entitled to a severance merely because it would give him a better chance of acquittal. *See United States v. Tanner*, 471 F.2d 128, 137 (7th Cir. 1972). Thus, antagonistic defenses do not require the granting of severance, *United States v. Hutal*, 416 F.2d 607, 620 (7th Cir.), *cert. denied*, 396 U.S. 1007, 90 S.Ct. 562, 24 L.Ed.2d 499 (1970), even when one defendant takes the stand and blames his co-defendant for the crime. *United States v. Joyce*, 499 F.2d 9, 21 (7th Cir.), *cert. denied*, 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974).

Severance of offenses and defendants is discretionary with the trial court. Where proof of the charges against defendants is dependent upon the same evidence and alleged acts, severance should not be granted except for the most cogent reasons. *See United States v. Kahn*, 381 F.2d 824 (7th Cir. 1967) and cases cited therein. In *Dauer v. United States*, 189 F.2d 343, 344 (10th Cir. 1951), *cert. denied*, 342 U.S. 898, 72 S.Ct. 232, 96 L.Ed. 672, the court noted:

The mere fact that there is hostility between defendants or that one may try to save himself at the expense of another is in itself alone not sufficient grounds to require separate trials. It is only when the situation is such that the exercise of common sense and sound judicial judgment should lead one to conclude that one defendant cannot have a fair trial, as that term is understood in law, that a severance should be granted.

The government has an interest in joining the several trials into one, especially here since the charges are to be proved by substantially the same evidence. There is a strong policy in favor of joint trial "where the charge against all the defendants may be proved by the same evidence and results from the same series of acts." *United States v. Cohen*, 124 F.2d 164, 165 (2d Cir.), *cert. denied sub nom.*; *Bernstein v. United States*, 315 U.S. 811, 62 S.Ct. 796, 86 L.Ed. 1210 (1942). *See also, United States v. Echeles*, 352 F.2d 892, 896 (7th Cir. 1965) recently quoted in *United States v. Harris*, 542 F.2d 1283, 1312 (7th Cir.), *cert. denied*, 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1976). To outweigh this government interest in joinder, the defendants must show that a joint trial would be fundamentally unfair. *United States v. Tanner, supra.* The defendants have not shown that a joinder will result in a clear likelihood of confusion in the jurors' mind *so great as to* prejudice the defendant, *United States v. Kahn, supra* at 839. Therefore the motion to sever is denied.

## XI

## MOTION FOR DISCOVERY AND INSPECTION

In an order dated September 8, 1978, Magistrate Jurco of this Court established a central depository for a large volume of books, records, documents and papers obtained by means of grand jury subpoenas *duces tecum*. The order provided that office space in the Chicago Field Office of the Antitrust Division of the United States Department of Justice serve as the central depository.

Pending before this Court is a motion for discovery and inspection filed on behalf of certain defendants pursuant to Rules 6(e), 16 and 17, Federal Rules of Criminal Procedure. Movants seek an order directing the government to make available to them all materials presently being stored in the central depository. In support of their position, movants argue that to deny them access to the requested material would effectively deprive them of information essential to the preparation of their defense.

The government does not oppose the production of the requested materials. However, several co-defendants and a number of non-defendants who have produced documents pursuant to the terms of the subpoena served upon them strenuously object to the compelled disclosure on the grounds that the materials contain highly confidential business information. In resisting the motion for discovery, the objecting parties argue that movants have failed to demonstrate a particularized need for the requested documents which would outweigh the need to maintain the secrecy of grand jury proceedings. Moreover, they contend that the protection of grand jury secrecy is particularly appropriate here in order to prevent possible retaliation against those witnesses who appeared before the grand jury and who are competitors of defendants in the criminal antitrust case. *See, United States v. Proctor & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958).

■ It is undisputed that the secrecy of the grand jury applies to documents as well as testimony of non-defendants. *See, In re July 1973 Grand Jury*, 374 F.Supp. 1334 (N.D.Ill.1973); *In re Grand Jury Proceedings*, 29 F.R.D. 151 (E.D.Pa.1961) aff'd. 309 F.2d 440 (3rd Cir.1962). It is equally well settled that a petition or motion for leave to inspect grand jury material is addressed to the sound discretion of the trial court. *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940). In deciding whether to release grand jury material, our Court of Appeals has cautioned:

. . . that 'grand jury testimony is ordinarily confidential,' and that its secrecy 'must not be broken except where there is a compelling (need) . . . shown with particularity.' And where disclosure is permitted, it is to be done 'discretely and limitedly.' (Citations omitted)

*Pollard v. United States*, 441 F.2d 566, 567–68 (7th Cir. 1971).

■ The instant indictment alleges an industry-wide conspiracy and scheme to defraud in the awarding of sheet metal contracts on public projects in the Chicago area. The movants contend that the bids prepared by them and the bids prepared and submitted by competing organizations on the projects set forth in the indictment are highly relevant and material to their defense. Movants suggest that they may seek to defend the charges alleged in the indictment on the theory that every bid prepared or submitted by them was fair and directly related to significant economic factors in the sheet metal industry. For movants to present such a defense, they need to introduce the practices of the trade, particularly those practices engaged in by their competitors in connection with the projects listed in the indictment. Unless they are allowed access to the requested material, movants argue that they will be unfairly thwarted in their attempts to develop a trade practice theory of defense. This court agrees.

In *Dennis v. United States*, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), the Court held that the trial court had committed reversible error by denying defendants' motion to produce the grand jury testimony of four key government witnesses. The Court in *Dennis* recognized that "disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." *Id.*, at 870, 86 S.Ct. at 1849. The Court further reasoned that "In our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact." *Id.*, at 873, 86 S.Ct. at 1851.

In finding that the defendants in *Dennis* had met their burden of showing a particularized need, the Court noted that the government had conceded the minimal importance of preserving the secrecy of the grand jury, and further the government admitted the persuasiveness of the arguments advanced in favor of disclosure. Similarly, the government in the case at bar does not oppose the production of the withheld documents, thus conceding the minimal importance of grand jury secrecy and implicitly recognizing the movants' need to obtain all relevant and material information contained therein. Under these circumstances, it can fairly be said that movants have shown the particularized need necessary to justify disclosure. Indeed, it would be an extremely difficult task, if not an impossible one, for movants to demonstrate their need with greater precision insofar as movants have not had prior access to these documents.

 While mere consent of the government alone does not automatically warrant disclosure of grand jury material, it is equally true that the objecting parties' interest in confidentiality does not necessarily mandate non-disclosure. The confidential nature of the requested documents can be adequately dealt with under the terms of the protective order previously entered in this case. *See, State of Illinois v. Sarbaugh*, 552 F.2d 768 (7th Cir. 1977).

In granting the present motion for discovery, this court does not authorize a wholesale intrusion into all the materials located in the central depository. Accordingly, disclosure is hereby limited to documents produced pursuant to the paragraphs of the subpoena *duces tecum* which relate directly to the bidding procedures within the sheet metal industry as set forth in this Court's order dated March 14, 1979.

Regarding disclosure of the grand jury transcripts of people who will not be called as witnesses at the trial, the court sees no reason for requiring disclosure without some showing of particularized need by the defendants. No such showing has been made at this time.

XII

## MOTION FOR A BILL OF PARTICULARS

The functions of a bill of particulars under Rule 7(f) of the Federal Rules of Criminal Procedure are to provide a defendant with additional facts necessary to prepare a proper defense, to avoid prejudicial surprise at trial, and to protect a defendant from possible double jeopardy. *United States v. Mahany*, 305 F.Supp. 1205, 1208–9 (N.D.Ill. 1969). Perhaps no other type of criminal case reaching the federal courts involves more complexity of issues and evidence than antitrust cases. Professor Moore has commented on the importance of a bill of particulars in such a case. 8 *Moore's Federal Practice—Criminal Rules*, ¶ 7.06(2), p. 7–41 (1978). To this end, the government in this case has submitted an extensive voluntary bill of particulars. In this voluntary bill of particulars the government disclosed the names of the unindicted co-conspirators, the times they participated in the conspiracy, the names, dates and contractors involved in over 80 jobs allocated to the defendants and co-conspirators, extensive evidentiary detail regarding the alleged conspiratorial meetings, along with various other evidentiary materials describing the manner in which the bids were allegedly rigged. This information goes far beyond what the government is required to disclose.

 Defendants' have also requested the names of prospective government witnesses. The purpose of a bill of particulars is to adequately inform a defendant as to the indictment against him and is not to supply the defendant with a list of the government's witnesses. *United States v. Cansler*, 419 F.2d 952, 954 (7th Cir. 1969), *cert. denied*, 397 U.S. 1029, 90 S.Ct. 1278, 25 L.Ed.2d 540 (1970); *Yeargain v. United States*, 314 F.2d 881 (9th Cir. 1963). However, a federal court clearly has the authority to require the government to make a pretrial disclosure of anticipated witnesses. *United States v. Jackson*, 374 F.Supp. 168 (N.D.Ill.1974), *affd. in relevant part*, 508

F.2d 1001 (7th Cir. 1975). In *Jackson*, Judge Marshall ordered disclosure and cited the following reasons for his order:

1) to enable the court to determine, with some degree of accuracy the length of time to be allocated to the trial of the case, thereby facilitating docket control;

2) to expedite the trial by fostering more purposeful cross-examination; and

3) to protect against the adverse consequences of the situation in which a juror is acquainted with a witness by permitting knowledgeable voir dire questions. (374 F.Supp. at 175–177). That case involved nearly 100 checks and 100 witnesses. This case may very possibly involve many more documents and nearly as many witnesses. For the same reasons Judge Marshall cited in his order, this court orders that the names of the government witnesses be made available to the defendant thirty (30) days in advance of trial. Defendants are also ordered to disclose the names of their potential witnesses at that time.

All other requests by the defendants seek evidentiary detail which is beyond the appropriate limits of a bill of particulars. Numerous cases have denied particulars asking for details of conspiratorial meetings, what was said at each meeting, and all the acts of the co-conspirators tending to connect each of them to the alleged conspiracy. *See United States v. Greater Kansas City Retail Coal Merchants Ass'n*, 85 F.Supp. 503 (W.D. Mo.1949); *Rubio v. United States*, 22 F.2d 766 (9th Cir. 1927); *United States v. Malinsky*, 19 F.R.D. 426 (S.D.N.Y.1956); *United States v. Van Wagenen-Sager, Inc.*, 34 F.Supp. 735 (N.D.N.Y.1940). Similarly, the substance of all conversations and oral statements have been beyond the scope of a bill of particulars. *United States v. Tanner*, 279 F.Supp. 457, 477 (N.D.Ill.1967). As stated earlier, much of this information has been turned over voluntarily, even though there is no requirement to do so. Accordingly, defendants' motion for a bill of particulars, to the extent not already complied with, is denied.

## XIII

## DEFENDANT'S MOTION FOR DISCLOSURE OF FAVORABLE EVIDENCE

Defendants have filed various motions for disclosure of favorable evidence and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) material. The government has stated that it recognizes its continuing duty under *Brady* and has turned over all such material.

The government has cited the materiality test of *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and has based its *Brady* disclosures on that test. In *Agurs*, the court held that the proper standard of review for the materiality of undisclosed evidence is that if the omitted evidence creates a reasonable doubt of guilt that did not otherwise exist, constitutional error has been committed. The mere possibility that an item of undisclosed information might have aided the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense.

There is nothing in *Brady* or *Agurs* to require that such disclosures be made before trial, provided no prejudice results from the later disclosure. *United States v. Stone*, 471 F.2d 170, 173–74 (7th Cir. 1972), *cert. denied*, 411 U.S. 931, 93 S.Ct. 1898, 36 L.Ed.2d 391 (1973). *See also United States v. Lomprez*, 472 F.2d 860 (7th Cir. 1972), *cert. denied*, 411 U.S. 965, 93 S.Ct. 2144, 36 L.Ed.2d 685 (1973). Thus, even though evidence might be material or might create a reasonable doubt as to guilt, due process, albeit requiring eventual disclosure, does not require that in all instances this disclosure must occur before trial. The appropriate standard to be applied in a case such as this is whether the disclosure came so late as to prevent the defendant from receiving a fair trial. *United States v. McPartlin*, 595 F.2d 1321 (7th Cir. 1979); *United States v. Stone*, 471 F.2d at 174.

Based on the representations of the government that the *Agurs* standard was followed, defendants' motion for favorable evidence is granted. The only information

not provided by the government were the names, addresses and statements of persons interviewed in this case who will not be called as witnesses. Unless such information is *Brady* material using the *Agurs* standard, the court sees no reason why it should be disclosed. Accordingly, that request by the defendants is denied.

## XIV

## DEFENDANTS' MOTION TO REQUIRE THE GOVERNMENT TO GIVE NOTICE OF THEIR INTENTION TO USE CERTAIN EVIDENCE

Defendants have moved pursuant to Rule 12(d)(2) of the Federal Rules of Criminal Procedure for an order requiring the government to give notice of its intention to use at *any* time during the case, evidence of other crimes, wrongs or acts of any defendant, as the phrase is used in Rule 404(b) of the Federal Rules of Evidence. They also seek disclosure of specific instances of conduct of a defendant as used in Rule 608(b) of the Federal Rules of evidence. Defendants also request the government to identify and describe: (1) specific details about any such conduct, (2) statements of any participants, (3) any documents containing or evidencing such conduct, and (4) with respect to Rule 404(b) evidence, the issues on which the government believes the evidence is relevant.

Rule 12(d)(2) requires the government, upon request from the defendant, to provide evidence to the defendant which the government intends to use in its case in chief at trial and which is discoverable under Rule 16.

 Defendants' motion for an order requiring the government to give notice of its intention to use other crimes, wrongs or acts as evidence is granted in part and denied in part. Any request asking for notice of the government's intention to use other crimes, wrongs or acts during *cross-examination of a defendant or in the government's rebuttal case* is denied, as Rule 12(d)(2) only requires notice of such material if used in the government's case in chief. As correctly pointed out ·by the

government, the purpose of Rule 12(d)(2) is to enable the defendant to file a motion to suppress, not to provide him with information he normally could not discover under Rule 16. Accordingly, the only information the government is required to turn over is: (1) any defendant's prior record [Rule 16(a)(1)(B)]; (2) documents and tangible objects the government intends to introduce as evidence in its case in chief, or were obtained from and belong to the defendant [Rule 16(a)(1)(C)]; (3) any statement of the defendant [Rule 16(a)(1)(A)]. Requests for any other information in these motions are denied, since they ask for information beyond that discoverable under Rule 16.

## XV

## MOTION TO STRIKE SELECTED PORTIONS OF THE INDICTMENT

 Rule 7(d) of the Federal Rules of Criminal Procedure provides that the court may strike surplusage from the indictment. The Advisory Committee note to Rule 7(d) describes surplusage that may properly be stricken from an indictment as "immaterial and irrelevant allegations . . . which may, however, be prejudicial." The inclusion of clearly unnecessary language in an indictment that could serve only to inflame the jury, confuse the issues, and blur the elements necessary for conviction under the separate counts involved surely can be prejudicial. *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971); *United States v. Spock*, 416 F.2d 165 (1st Cir. 1969); *United States v. Bufalino*, 285 F.2d 408 (2nd Cir. 1960). However, if the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant). *United States v. Chas. Pfizer & Co.*, 217 F.Supp. 199 (S.D.N.Y.1963), *rev'd on other grounds*, 426 F.2d 32 (2nd Cir. 1970).

 Defendant Howard has moved to strike certain portions of the indictment which give background about the sheet metal industry in general and in Chicago in particular. There is nothing prejudicial about those portions, and they are indeed

relevant to forming an understanding about the nature of this action. The defendants also feel that the "among other things" and "among others" language of certain paragraphs should be stricken. The language refers to overt acts and effects of the conspiracy respectively.

It is not necessary that all the overt acts which will be proved at trial must be included in the indictment. *Wong Tai v. United States*, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927). Significantly, the "among other things" language is not part of the charging paragraph. If it were, it might give the jury the impression that the defendants are charged with more crimes than those contained in the indictment. On the contrary, the phrase only refers to the proof of the crimes, and serves as a device to allow the government to prove more than that alleged in the indictment. If the government were required to detail *all* of its proof in an indictment, rather than the portions they include now, the indictments in many cases would resemble books. The same explanation applies to the "among others" language used when describing the effects of the alleged conspiracy.

Finally, defendants argue that the indictment should contain no references to the effects of the combination and conspiracy charges. However, evidence of the effects is admissable to prove the existence of the unlawful combination or the intent of the participants in forming it. *United States v. United States Gypsum Co.*, 438 U.S. 422, 98 S.Ct. 2864, 2878, 57 L.Ed.2d 854 (1978); *United States v. Amax, Inc.*, Crim. No. 76 CR 783 (N.D.Ill.1976). Unlawful intent is now an element of a Sherman Act offense. *United States Gypsum Co., supra.* Accordingly, the effects are extremely relevant and in this case are not prejudicial. Defendants' motion to strike is denied.

## XVI

## MOTION FOR PRETRIAL HEARING TO DETERMINE ADMISSIBILITY OF CO–CONSPIRATOR DECLARATIONS

Defendants have moved for a pretrial hearing to determine the admissibility of co-conspirator declarations. Defendants argue that a pretrial hearing is necessary to determine the sufficiency of the independent evidence that a conspiracy existed in order to avoid unfair prejudice.

The trial judge retains the option of conditionally admitting the co-conspirator declaration evidence before the conspiracy has been independently established, but subject to the subsequent fulfillment of that critical condition. *United States v. Stanchich*, 550 F.2d 1294, 1298 (2nd Cir. 1977). In the event of such a failure a mistrial may be required, and even if not, an instruction for the jury to disregard the statements would be in order. *United States v. Santiago*, 582 F.2d 1128, 1131 (7th Cir. 1978). Because of the lengthy nature of this trial, the question of the admissibility of co-conspirator declarations will be decided by this court at trial, and not at a pretrial hearing.

## XVII

## DEFENDANTS' MOTION FOR ADDITIONAL DISCOVERY UNDER RULES 16(a)(1)(A), (B), (C) AND (D)

The defendants have requested the substance and circumstances of any statement made by a defendant to any other person. The cases of *United States v. Feinberg*, 502 F.2d 1180 (7th Cir. 1974) and *United States v. Callahan*, 534 F.2d 763 (7th Cir. 1976) have held that unwritten, unrecorded oral statements made by a defendant to a government witness are not discoverable. The only statements required to be turned over are oral statements made by the defendants which have been written or recorded, and the government has represented that it does not possess such statements.

All of the other Rule 16 requests of the defendants have been complied with, other than disclosure of the circumstances surrounding statements of any persons which incorporate statements of defendants. The

court finds no cases requiring such disclosure, and Rule 16 certainly does not mandate it.

Accordingly, defendants' motion for additional discovery, to the extent not already complied with, is denied.